**UNITED STATES of America,**

**v.**

**Peter MAHIQUES, Defendant.**

**No. 95–CR–200C.**

United States District Court,
W.D. New York.

Dec. 7, 1998.

172

Denise E. O'Donnell, United States Attorney, Buffalo, NY (Joseph J. Karaszewski, Assistant United States Attorney, of counsel), for U.S.

The Legal Aid Society, Federal Defender Division, Buffalo, NY (Steven M. Statsinger, of counsel), for Defendant.

## DECISION and ORDER

CURTIN, District Judge.

### BACKGROUND

In January 1996, Chang Kui Jiang and Peter Mahiques were indicted for conspiring to smuggle and transport illegal aliens into the United States. Jiang, a Canadian citizen, pled guilty to the charges. In his plea colloquy, Jiang named Mahiques as his coconspirator. Pursuant to his plea agreement Jiang was to assist the government at Mahiques's trial.

Before Jiang had signed his plea agreement, the government commenced forfeiture proceedings against Jiang's car, which was allegedly used to commit the crimes. Jiang hired attorney Mark Mahoney to represent him in the forfeiture proceedings. Jiang had hired a different attorney to represent him in his plea negotiations with the government. Unlike Jiang, Mahiques pled innocent to the government's charges. He hired James Harrington, Mahoney's law partner, to defend him.

Subsequent to his plea agreement but prior to Mahiques's trial, Jiang met with United States Immigration Agent James Higgins. At that meeting Higgins asked Jiang to identify Mahiques from a photographic lineup. Jiang was unable to do so. Higgins then asked Jiang for further information regarding Mahiques's involvement in the alleged conspiracy. Jiang responded with comments that potentially exculpated Mahiques.

At trial, Harrington called Higgins as a witness and attempted to question him as to what occurred at his meeting with Jiang. The government objected. This court then held a separate hearing, outside the presence of the jury, to rule on the government's objection. At the hearing, the government argued that Jiang's statements were hearsay, and if the defendant wanted to put the events of that meeting into evidence Harrington should call Jiang to testify.[1] Alternatively, the government argued that should the court admit Jiang's statements to Higgins, the government should be allowed to impeach those statements with statements from Jiang's plea colloquy. Ultimately, this court decided to admit Jiang's inability to identify Mahiques, along with the exculpatory statements Jiang made to Higgins, but excluded Jiang's plea statement.

Before the trial resumed, the government raised the issue of whether there was a potential conflict of interest between Harrington, Jiang, and Mahoney. Harrington assured this court that his partnership with Mahoney was not a problem, considering that neither the defendant nor the government intended to call Jiang as a witness. Upon hearing this, the government stated that it had no further objections to proceeding, and the trial therefore resumed.

On December 17, 1996, the jury convicted Mahiques on three of the four charges. On April 8, 1997, this court sentenced Mahiques to two years probation, four months home confinement, and 100 hours of community service. Mahiques appealed the conviction. Ruling on the appeal, the Second Circuit remanded this case for further review.

1. Although the government did concede that Jiang had returned to Canada, it argued that Harrington was aware of his whereabouts and should therefore make some attempt to bring Jiang before the court. However if Jiang would not return voluntarily, there was no practical way for Harrington to force his return, especially when the government did not offer its assistance.

## Standard for Assessing Conflicts of Interests

 The Sixth Amendment right to counsel includes a correlative right to representation that is free from a conflict of interest. *U.S. v. Levy*, 25 F.3d 146, 152 (2d Cir.1994) (citing *Wood v. Georgia*, 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981)). To protect this right, a trial court has a duty to investigate the facts and circumstances of an attorney's interests that the court is aware of or reasonably should be aware of to determine whether there is a possible conflict of interest. *U.S. v. Stantini*, 85 F.3d 9, 13 (2d Cir.1996). In its investigation, the court must "determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." *U.S. v. Levy*, 25 F.3d 146, 153 (2d Cir.1994).

 Upon finding that a potential conflict of interest exists, the court must ensure that the conflict is either eliminated or waived. *U.S. v. Lussier*, 71 F.3d 456, 461 (2d Cir.1995). A waiver can only be obtained from the client after the court has held a hearing pursuant to the Second Circuit's decision in *U.S. v. Curcio*, 680 F.2d 881, 888–90 (2d Cir.1982). If the court discovers that an actual conflict exists-such that the conflict is so severe that no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation-the court is obligated to disqualify the attorney. *U.S. v. Levy*, 25 F.3d at 153. Should the court find, after its initial inquiry, that no genuine conflict exists, the court has no further obligation. Automatic reversals are granted only where a district court entirely ignored the possibility of a conflict of interest. *Ciak v. U.S.*, 59 F.3d 296, 306 (2d Cir.1995).

### ISSUES FOR REVIEW

Mahiques presented two arguments on appeal. First, Mahiques argued that his conviction should be automatically reversed because this court "entirely ignored" the possibility of a potential conflict of interest. Alternatively, Mahiques sought reversal because this court did not obtain a waiver of his right to unconflicted counsel as required by *U.S. v. Curcio*.

The Second Circuit did not reverse Mahiques's conviction. Instead, the court remanded the case for clarification of "whether defense counsel had a potential conflict, an actual conflict, or no conflict at all." *U.S. v. Jiang*, 140 F.3d at 129. The Second Circuit instructed that should this court find that a conflict of interest existed, an evidentiary hearing should be held to determine its effect on the defendant. If this court finds that no conflict of interest was created by Harrington and Mahoney's partnership, the Second Circuit stated that no further action is required.

### 1. Existence of a Potential Conflict or Actual Conflict

 According to the Second Circuit, the partnership between Harrington and Mahoney creates a conflict of interest only "if [defendant], represented by a conflict-free attorney, might have found it useful for Jiang to testify." *Id.* at 127–28. A thorough review of the record reveals that Jiang could not serve as a "useful" witness to any defense attorney, regardless of whether the attorney was or was not laboring under a conflict of interest.

Although Jiang was unable to identify Mahiques in a photographic lineup and had made statements to Inspector Higgins that exculpated Mahiques, Jiang had also named Mahiques as his co-conspirator in his plea colloquy. Obviously, these statements are inconsistent. Any useful testimony that a defense attorney could elicit from Jiang would ultimately be impeached and discredited by the incriminating statements Jiang made in his plea colloquy. Thus, Jiang could not be a useful witness to the defense under any circumstances.

In addition, the fact that Jiang was not present at Mahiques's trial actually served to his benefit and cannot be viewed as prejudicing his case. At trial, this court was concerned about the effect Jiang's absence had on Mahiques's case. As such, the court allowed Harrington to elicit the potentially exculpatory evidence from Higgins while precluding the government from impeaching that evidence. Given these rulings, the de-

fense was allowed to present evidence in this case which would have been impeached and discredited had Jiang actually been present at the trial. Therefore, the defendant was not prejudiced by Jiang's absence.

Accordingly, this court finds that Harrington's and Mahoney's relationship did not create a potential or actual conflict of interest.

### 2. Absence of a Curicio Wavier

■ This court did inquire into the existence of a potential conflict between Harrington and Mahoney, but found that such a conflict did not exist. Therefore, this court was not under any obligation to either hold a hearing pursuant to the Second Circuit's decision in *U.S. v. Curcio,* or to secure a waiver from the defendant of his Sixth Amendment right to unconflicted counsel.

### 3. Harrington's Declaration

Mahiques argues that his conviction should either be reversed or an evidentiary hearing held because Harrington has recently submitted a declaration, in which he asserts that he might have called Jiang to testify had Jiang been available. Clearly, defendant has misinterpreted the Second Circuit's instructions. The Court held that a conflict of interest existed only if an unconflicted attorney might have found it beneficial to call Jiang as a witness. Thus, what Harrington might have done had Jiang been available is completely irrelevant to this court's current inquiry.[2]

### CONCLUSION

Because it has been determined that no potential nor actual conflict of interest exists in this case, no further action is required from this court.

So ordered.

---

**2.** Harrington's recent declaration is extremely suspect given his statements during the trial that there was no conflict of interest because Mr. Jiang was not part of Mahiques's defense. However, the court offers no further comment on Mr. Harrington's declaration due to the fact that what Harrington "might" have done is not an issue before this court.